**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
:
MALIBU MEDIA, LLC, :
: Case No. 1:15-cv-01847-ER
Plaintiff, :
: Judge Edgardo Ramos
vs. :
:
:
JOHN DOE subscriber assigned IP address :
74.101.133.85, :
:
Defendant. :
---------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE**

[Remainder of page intentionally left blank]

# TABLE OF AUTHORITIES

*Accord Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 572 (6th Cir. 2010)..........................5
*Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003) ........................................................................5
*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010)......................................................................4&8
*Blakeslee v. Clinton County*, 336 Fed. Appx. 248, 250 (3d Cir. 2009)..........................................................5
*Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998) ..........................................................................................4
*Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992)................................................................................5
*Elektra Entm't Group, Inc. v. Doe*, 2008 WL 5111886, at 4 (E.D.N.C. 2008)...............................................7
*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).................................................5
*Green v. Doe*, 260 Fed. Appx. 717, 719 (5th Cir. 2007)................................................................................5
*John Wiley & Sons, Inc. v. Doe Nos. 1-30*, 284 F.R.D. 185, 189, 191 (S.D.N.Y. 2012)...................4,7,8,&9
*Krueger v. Doe*, 162 F.3d 1173 (10th Cir. 1998)...........................................................................................5
*Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980) .....................................................................................5
*Malibu Media LLC v. John Does 1-12,* 2012 WL 5928528 (C.D. Ill. 2012).................................................7
*Malibu Media, LLC* v. Doe No. 4, 2012 WL 5987854, at 3 (S.D.N.Y. 2012).............................................6
*Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 782 (E.D. Pa. 2013)..........................6
*Malibu Media, LLC v. John Does 1-11*, 2013 WL 3732839 (S.D.N.Y. 2013) ..................................4,6,8&9
*Malibu Media, LLC v. John Does 1-18*, 2012 WL 8264665, at 6 (E.D. Pa 2012)........................................8
*Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985) .....................................................................................5
*Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011) ................................................................5
*Sony Music Entm't v. Does 1-40*, 326 F. Supp. 2d 556, 564-66 (S.D.N.Y. 2004)...............................4,6,7,8
*Young v. Transp. Deputy Sheriff I*, 340 Fed. Appx. 368 (9th Cir. 2009) ......................................................5

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE

Pursuant to Fed. R. Civ. P. 26(d)(1), Plaintiff hereby respectfully submits this Memorandum in support of its Motion for Leave to serve a third party subpoena prior to a rule 26(f) conference.

### I.      INTRODUCTION

Plaintiff, Malibu Media, (d/b/a "X-art.com") operates a popular subscription based website.[1]  Plaintiff creates its own content which is being infringed on a massive scale.  The John Doe Defendant's IP address has been habitually used to infringe Plaintiff's copyrighted works.  Accordingly, Plaintiff seeks leave to serve limited, immediate discovery on the John Doe Defendant's Internet Service Provider, Verizon Internet Services (hereafter "ISP") so that Plaintiff may learn Defendant's true identity.  Plaintiff is suing Defendant for using the Internet, specifically the BitTorrent file distribution network, to commit direct copyright infringement.

Because Defendant used the Internet to commit this infringement, Plaintiff only knows Defendant by his Internet Protocol ("IP") address.  Defendant's IP address was assigned to the Defendant by his respective Internet Service Provider ("ISP").  Accordingly, the ISP can use the IP address to identify the Defendant.[2]  Indeed, ISPs maintain internal logs, which record the date, time and customer identity for each IP address assignment made by that ISP.  Significantly, ISPs may maintain these logs for only a short period of time.[3]

---

[1] *See* Declaration of Colette Field, attached hereto as Exhibit "A."
[2] *See* Declaration of Patrick Paige, attached hereto as Exhibit "B."
[3] Statement Of Jason Weinstein Deputy Assistant Attorney General Criminal Division Before The Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security United States House Of Representatives, (January 2011) at http://judiciary.house.gov/hearings/pdf/Weinstein 01252011.pdf, stating: "Some [ISP] records are kept for weeks or months; others are stored very briefly before being purged."

Plaintiff seeks leave of Court to serve a Rule 45 subpoena on the Defendant's ISP. This subpoena will demand the true name and address of the Defendant. Plaintiff will only use this information to prosecute the claims made in its Complaint. Without this information, Plaintiff cannot serve the Defendant nor pursue this lawsuit to protect its valuable copyrights.

**II.   FACTS**

    A. <u>Online Copyright Infringement Through the BitTorrent Protocol is a Serious and Significant Threat to Plaintiff's Business</u>

Colette Pelissier Field, with her husband Brigham Field, are the owners of Malibu Media and began their business from scratch. *See* Exhibit A at ¶3. Ms. Field was a real estate agent and Mr. Field was a photographer. *Id*. at ¶ 4. When the real estate market started heading south, Ms. Field knew she and her husband needed to start a business together. *Id*. at ¶ 5. The Fields both felt that there was a lack of adult content that was beautiful and acceptable for women and couples. *Id*. at ¶ 6. The Fields wanted to create this type of content to satisfy what they hoped was an unfulfilled demand. *Id*. Their goal was to create erotica that is artistic and beautiful. *Id*. at ¶ 7. The Fields chose the name 'X-Art' to reflect their artistic aspirations, and began investing all of their available money and resources into the production of content – particularly erotic movies with high production value and a cinematic quality. *Id.* at ¶ 8.

Their vision has come to fruition. Currently, X-Art.com has tens of thousands of members, but the Fields are finding it hard to grow and maintain the memberships when so many people are finding their films for free. *Id.* at ¶ 15. They have worked hard and invested millions of dollars into their business in order to produce the best quality product. *Id*. at ¶ 14. For the first three years (when their site was not as popular) they did not have as many issues with piracy. *Id.* at ¶ 18. Now that their videos are highly desirable, more people steal their videos than pay for a subscription. *Id*. Malibu Media receives many complaints from its members

asking why they should pay to subscribe when Malibu Media's movies are available for free through BitTorrent.  *Id*. at ¶ 19.  Malibu Media invests significant resources into pursuing all types of anti-piracy enforcement, such as Digital Millenium Copyright Act ("DMCA") takedown notices and direct efforts aimed at infringing websites.  *Id.* at ¶ 27.  Despite sending thousands of DMCA notices per week, the infringement continues.  *Id*. at ¶ 28.  And, if one searches for "X-Art" on a torrent website the site will reveal thousands of unauthorized torrents available for free.  *Id*.  Plaintiff Malibu Media has filed suit in this judicial District and in judicial districts across the country seeking to deter and stop the infringement.

Recently, Plaintiff won the first ever BitTorrent copyright infringement lawsuit to reach trial.  *See Malibu Media, LLC v. John Does 1, 6, 13, 14 and Bryan White*, 2013 WL 3038025 at n.1 (E.D. Pa. June 18, 2013).  In his Memorandum Report after the conclusion of the trial, the Honorable Judge Baylson made a number of significant findings.  Importantly, Judge Baylson found "Malibu Media Malibu has satisfied its burden of proof with substantial evidence and deserves a large award*."  Malibu Media, LLC v. John Does 1, 6, 13, 14*, CIV.A. 12-2078, 2013 WL 3038025 (E.D. Pa. June 18, 2013).

    B. <u>Courts throughout the Country Have Expressly Found that Malibu Media's Counsel do not Engage in Improper Litigation Tactics</u>

Judge Baylson expressly emphasized that "Malibu is *not* what has been referred to in the media and legal publications, and in the internet blogosphere, as a 'copyright troll' . . . Rather, Malibu is an actual producer of adult films and owns valid copyrights, registered with the United States Copyright Office, in its works." *Id.* (Emphasis in original).  The Honorable Judge Hegarty of the District of Colorado has also acknowledged Plaintiff's good faith and stated: "the Court has … witnessed firsthand the Plaintiff's willingness to resolve cases without any monetary

5

payment when a Defendant credibly denies infringement." *Malibu Media, LLC v. John Does 1-2, 4-8, 10-16, 18-21*, 2013 WL 1777710 (D. Colo. Feb. 12, 2013).

Other courts have opined that the criticism often attributed to filers of BitTorrent lawsuits is unwarranted when directed at Plaintiff. "[N]one of the instances of improper litigation tactics that have been brought to our attention involve plaintiff or plaintiff's counsel. We are reluctant to prevent plaintiff from proceeding with its case based only on a 'guilt-by-association' rationale*.*" *Malibu Media, LLC v. John Does 1-5*, 285 F.R.D. 273, 278 (S.D.N.Y. 2012). "[Defendant] has not presented any evidence that Malibu has engaged in harassing behavior for the Court to consider, nor has the Court observed bad faith behavior or the use of improper tactics on its part thus far." *Malibu Media, LLC v. John Does 1-6*, 2013 WL 2150679 (N.D. Ill. May 17, 2013). *See also Malibu Media, LLC v. John Does 1-30*, 2:12-cv-13312-DPH-MJH [CM/ECF 61] at p. 15 (E.D. Mich. May 16, 2013) (same); *Malibu Media, LLC v. John Does 1-9*, 8:12-cv-00669-SDM-AEP [CM/ECF 25] at p. 7 (M.D. Fla. July 6, 2012) (same).

### C. Plaintiff Does Not Solicit Settlements Prior to Serving a Defendant and Always Consents to Allowing a John Doe Defendant to Proceed Anonymously

Plaintiff has filed this suit for the sole purpose of protecting and enforcing its copyrights.

> We do not seek to use the Court system to profit from the infringement like some have suggested. As previously stated, revenues from subscriptions to X-Art.com are by far and away the dominant driver of Malibu Media's business. We want the infringement to stop. Accordingly, the purpose of these lawsuits is to motivate people to pay for subscriptions by deterring infringement and seek some reasonable compensation for the massive amount of infringement of our copyrights.

*See* Exhibit A ¶ 31. Plaintiff has no intention of embarrassing Defendant because of the content of the works at issue and has instructed all of its counsel to always consent to allowing a John Doe Defendant to proceed anonymously. Further, Plaintiff does not solicit settlements prior to serving a defendant with the complaint and in all of its individual suits against a defendant, has

only settled prior to serving when the defendant has initiated the request.  Indeed, this is Malibu Media's nationwide policy.  Should the Court wish to include language in its Order preventing Plaintiff from initiating settlements with Defendant and allowing Defendant to proceed anonymously, Plaintiff will not object.

    D.  The Infringer

Defendant's Internet was used to infringe 78 of Plaintiff's copyrighted movies between and 01/26/2015.  *See* Exhibit A to Complaint.  Defendant's Internet has been used to illegally downloaded Plaintiff's movies over the course of several months.  By downloading each of these movies through the BitTorrent protocol, Defendant simultaneously distributes these movies to others, allowing other people to also steal Plaintiff's movies.  *See* Complaint, at ¶¶ 11 -20.

The length of time which Plaintiff's investigator recorded Defendant infringing Plaintiff's movies demonstrates that the infringer was not a mere guest or passerby.  It was someone with access to Defendant's Internet for a long period of time, consistently.

**III.**    **ARGUMENT**

Pursuant to Rule 26(d)(1), except for circumstances not applicable here, absent a court order, a party may not propound discovery in advance of a Rule 26(f) conference.  Rule 26(b) provides courts with the authority to issue such an order: "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."  In Internet infringement cases, courts routinely find good cause exists to issue a Rule 45 subpoena to discover a Doe defendant's identity, prior to a Rule 26(f) conference, where: (1) plaintiff makes a prima facie showing of a claim of copyright infringement, (2) plaintiff submits a specific discovery request, (3) there is an absence of alternative means to obtain the subpoenaed information, (4) there is a central need for the subpoenaed information, and (5) defendants have a

minimal expectation of privacy. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) (citing *Sony Music Entm't v. Does 1-40*, 326 F.Supp.2d 556, 564-65 (S.D.N.Y. 2004) (numbers added)); *Malibu Media, LLC v. John Does 1-11*, 2013 WL 3732839 (S.D.N.Y. 2013) (same); *John Wiley & Sons, Inc. v. Doe Nos. 1-30*, 284 F.R.D. 185, 189 (S.D.N.Y. 2012) (same).

 A. <u>Circuit Courts Unanimously Permit Discovery to Identify John Doe Defendants</u>

Federal Circuit Courts have unanimously approved the procedure of suing John Doe defendants and then using discovery to identify such defendants. For example, the Second Circuit stated in *Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998) that "courts have rejected the dismissal of suits against unnamed defendants . . . identified only as 'John Doe's . . . until the plaintiff has had some opportunity for discovery to learn the identities." *See also*, *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011) ("A plaintiff who is unaware of the identity of the person who wronged her can . . . proceed against a 'John Doe' . . . when discovery is likely to reveal the identity of the correct defendant."). *Accord Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 572 (6th Cir. 2010); *Blakeslee v. Clinton County*, 336 Fed. Appx. 248, 250 (3d Cir. 2009); *Young v. Transp. Deputy Sheriff I*, 340 Fed. Appx. 368 (9th Cir. 2009); *Green v. Doe*, 260 Fed. Appx. 717, 719 (5th Cir. 2007); *Krueger v. Doe*, 162 F.3d 1173 (10th Cir. 1998); *Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992); *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985); *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980).

 B. <u>Good Cause Exists to Grant the Motion</u>

  1. *Plaintiff Has a Prima Facie Claim for Copyright Infringement*

A prima facie claim of copyright infringement consists of two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). Plaintiff satisfied the first

good cause factor by properly pleading a cause of action for copyright infringement:

> 29. Plaintiff is the owner of the Copyrights-in-Suit, as outlined in Exhibit B, each of which covers an original work of authorship.
>
> 30. By using BitTorrent, Defendant copied and distributed the constituent elements of each of the original works covered by the Copyrights-in-Suit.
>
> 31. Plaintiff did not authorize, permit or consent to Defendant's distribution of its works.

Complaint at ¶¶ 29-31.  *See* 17 U.S.C. §106; *In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003), *cert. denied*, 124 S. Ct. 1069 (2004) ("Teenagers and young adults who have access to the Internet like to swap computer files containing popular music. If the music is copyrighted, such swapping, which involves making and transmitting a digital copy of the music, infringes copyright."); *Malibu Media, LLC v. John Does 1-11*, 2013 WL 3732839 (S.D.N.Y. 2013) ("Plaintiff has made a concrete, prima facie case of copyright infringement by alleging ownership of the registered copyright and alleging unlawful downloading, copying, and distribution of this work by specifying the type of technology used, the IP address from which the file was accessed and shared, and the date and time of the infringement.").

Further, Plaintiff's allegations of infringement are attested to by Plaintiff's investigator, IPP International UG's employee, Tobias Fieser.  *See* Declaration of Tobias Fieser in Support of Plaintiff's Motion For Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference ("Fieser Declaration"), at ¶¶ 13 - 16, attached hereto as Exhibit "C."  During the first ever BitTorrent copyright lawsuit to reach trial, Judge Baylson concluded Plaintiff's technology was valid.  *See Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 782 (E.D. Pa. 2013) ("I concluded that Malibu had expended considerable effort and expense to determine the IP addresses of the infringing parties, and the technology employed by its consultants—both of whom were located in Germany and who testified at the trial of June 10, 2013—was valid.").

9

Accordingly, Plaintiff has exceeded its obligation to plead a prima facie case.

        2.    *Plaintiff Has Clearly Identified Specific Information It Seeks Through Discovery*

Plaintiff seeks to discover from the Defendant's ISP the true name and address of the Defendant. This is all specific information in the possession of Defendant's ISP that will enable Plaintiff to serve process on Defendant. Because the requested discovery is limited and specific, Plaintiff has satisfied the second good cause factor. *Sony Music Entm't v. Does 1-40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004); *Malibu Media, LLC v. John Does 1-11*, 2013 WL 3732839 (S.D.N.Y. 2013) (finding "the discovery request was adequately specific because it seeks the name and address of Defendant"); *Malibu Media, LLC v. Doe No. 4,* 2012 WL 5987854, at 3 (S.D.N.Y. 2012) (finding that a request seeking defendant's name, current and permanent address, e-mail address, and Media Access Control was "highly specific"). Pursuant to this Court's prior Order in *Digital Sins, Inc. v. John Does 1-245*, No. 11 CIV. 8170 CM, 2012 WL 1744838, at *1 (S.D.N.Y. May 15, 2012) (citing to *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80 (E.D.N.Y.)), Plaintiff has not requested any other information from the John Doe defendant's ISP, nor is any other information necessary for Plaintiff to effectuate service on Defendant and proceed with its case.

        3.    *No Alternative Means Exist to Obtain Defendant's True Identities*

Other than receiving the information from the Defendant's ISP, there is no way to obtain Defendant's true identity because "records are the only available evidence that allows us to investigate who committed crimes on the Internet. They may be the only way to learn, for example, that a certain Internet address was used by a particular human being to engage in or facilitate a criminal offense." *See* Statement of Jason Weinstein, *supra*, note 3. Indeed, "[o]nce provided with the IP Address, plus the date and time of the detected and documented activity,

ISPs can use their subscriber logs to identify the name, address, email address and phone number of the applicable subscriber in control of that IP address at the stipulated date and time." *See* Declaration of Patrick Paige at ¶ 11 (Exhibit B).  Because there is no other way for Plaintiff to obtain Defendant's identity, except by serving a subpoena on Defendant's ISP demanding it, Plaintiff has established the third good cause factor.  *See John Wiley & Sons, Inc.,* 284 F.R.D. at 190 ("[Plaintiff] has explained that the use of the BitTorrent software is 'largely anonymous' except insofar as it requires a user to broadcast the user's IP address ... [Plaintiff] has established that it lacks the means to obtain the subscriber's identifying information, other than by subpoena."); *Sony Music Ent., Inc.,* 326 F. Supp. 2d at 566 (finding no other method to obtain information than by subpoena under similar circumstances); *Elektra Entm't Group, Inc. v. Doe*, 2008 WL 5111886, at *4 (E.D.N.C. 2008) (finding that the feasibility of a suggested alternative method of determining defendants' identities by hiring a private investigator to observe downloading "is questionable at best"); *Malibu Media LLC v. John Does 1-12*, 2012 WL 5928528 (C.D. Ill. 2012) ("Because of the very nature of internet infringement, it is often the case that a plaintiff cannot identify an infringer in any way other than by IP number. Given the substantial federal policy underlying copyright law, it would be a travesty to let technology overtake the legal protection of that policy").

        4.    *Plaintiff Needs the Subpoenaed Information to Advance the Asserted Claims*

Without learning the Defendant's true identity, Plaintiff will not be able to serve the Defendant with process and proceed with this case.  Plaintiff's important statutorily protected property rights are at issue in this suit and, therefore, the equities weigh heavily in favor of preserving Plaintiff's rights.  Indeed, as set forth above, Plaintiff has chosen to file suit only against the worst of the worst infringers – ie. those that have repeatedly stolen Plaintiff's content

over a long period of time. Because identifying the Defendant by name is necessary for Plaintiff to advance the asserted claims, Plaintiff has established the fourth good cause factor. *See Malibu Media, LLC v. John Does 1-11*, 2013 WL 3732839 (S.D.N.Y. 2013) ("Ascertaining the identities and residencies of the Doe defendant[ ] is critical to [Plaintiff's] ability to pursue litigation, for without this information, [Plaintiff] will be unable to serve process." (quoting *Sony Music Entm't v. Does 1-40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004)); *John Wiley & Sons, Inc. v. Doe Nos. 1-30,* 284 F.R.D. 185, 191 (S.D.N.Y. 2012*)*(same); *Malibu Media, LLC v. John Does 1-18*, 2012 WL 8264665, at *6 (E.D. Pa 2012) ("Here, the subpoenaed information is highly critical because its absence prevents the Plaintiff from serving process on the defendants and proceeding with the litigation.").

5. *Plaintiff's Interest in Knowing Defendant's True Identities Outweighs Defendant's Interests in Remaining Anonymous*

Plaintiff has a strong legitimate interest in protecting its copyrights. Defendant is a copyright infringer with no legitimate expectation of privacy in the subscriber information he provided to his ISP, much less in distributing the copyrighted work in question without permission. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) ("[T]o the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected by the First Amendment."); *John Wiley & Sons, Inc. v. Doe Nos. 1-30*, 284 F.R.D. 185, 191 (S.D.N.Y. 2012) ("ISP subscribers have a minimal expectation of privacy in the transmission or distribution of copyrighted material."); *Malibu Media, LLC v. John Does 1-11*, 2013 WL 3732839 (S.D.N.Y. 2013) (same). Because Defendant does not have a legitimate interest in remaining anonymous, and Plaintiff has a strong, statutorily recognized and protected interest in protecting its copyrights, Plaintiff has established the fifth good cause factor.

    C.    <u>Plaintiff Used Geolocation Technology to Make a Prima Facie Case of Personal Jurisdiction</u>

As set forth in Plaintiff's Complaint, "Plaintiff used proven IP address geolocation technology which has consistently worked in similar cases to ensure that the Defendant's acts of copyright infringement occurred using an Internet Protocol address ("IP address") traced to a physical address located within this District". *See* Complaint at ¶ 5. Specifically, Plaintiff used Maxmind® Premium's IP geolocation database to determine that Defendant properly resided in a location both within the state of New York and this district.

This Court has previously held that "[w]hile such publicly available IP locators are not 100% accurate, they have been accepted as making out a prima facie case of personal jurisdiction." *Digital Sins, Inc. v. John Does 1-245*, No. 11 CIV. 8170 CM, 2012 WL 1744838, at *4 (S.D.N.Y. May 15, 2012). From Plaintiff's experience, Maxmind's Geolocation database has consistently predicted the location of the Defendant 99% of the time. Indeed, this exact geolocation technology has also been relied upon by federal law enforcement. *See United States v. Tillotson*, 2:08-CR-33, 2008 WL 5140773 (E.D. Tenn. Dec. 2, 2008) (noting that Maxmind's database correctly identified the Defendant and is sufficient to establish probable cause); *United States v. Richardson*, 4:11CR3116, 2012 WL 10382 (D. Neb. Jan. 3, 2012) (used by Homeland Security to identify the defendant).

    D.    <u>Plaintiff Has Filed a Notice of Related Cases Pursuant to Local Civil Rule 1.6(a)</u>

Pursuant to this Court's order in *Digital Sins, Inc. v. John Does 1-245*, No. 11 CIV. 8170 CM, 2012 WL 1744838 (S.D.N.Y. May 15, 2012) and Local Civil Rule 1.6(a) Plaintiff has filed a Notice of Related Cases notifying the Court of other similar cases filed by Plaintiff which may be related. *See* Notice of related Cases. Plaintiff has filed this notice in every open case in this District.

## IV.	CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant leave to Plaintiff to issue a Rule 45 subpoena to the ISP.

>	Respectfully submitted,
>
> By:	/s/ Jacqueline M. James
>	Jacqueline M. James, Esq. (1845)
>	The James Law Firm, PLLC
>	445 Hamilton Avenue
>	Suite 1102
>	White Plains, New York 10601
>	T: 914-358-6423
>	F: 914-358-6424
>	E-mail: jjameslaw@optonline.net
>
>	*Attorneys for Plaintiff*